# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30786

United States Court of Appeals
Fifth Circuit

**FILED**

April 27, 2017

Lyle W. Cayce
Clerk

CLAIMANT ID 100247288,

Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

Objecting Parties - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-4028

Before JONES, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:*

I

Felder's Collision Parts, Inc. ("Felder's") is a merchant in the aftermarket for auto parts in the Baton Rouge area, selling used parts to collision and repair centers. It filed a Decline-Only Business Economic Loss ("BEL") claim with the Court-Supervised Settlement Program ("CSSP"). As a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30786

Zone D Decline-Only BEL claimant, Felder's needed to satisfy the three prongs described in Part III.C of Exhibit 4B of the Settlement Agreement. Only the second prong is at issue in this appeal. The second prong requires a Zone D Decline-Only BEL claimant to provide:

> Specific documentation identifying factors outside the control of the claimant that prevented the recovery of revenues in 2011:
> - The entry of a competitor in 2011
> - Bankruptcy of a significant customer in 2011
> - Nearby road closures affecting the business
> - Unanticipated interruption resulting in closure of the business
> - Produce/Source replacement by Customer,
> - Loss of financing and/or reasonable terms of renewal

Felder's' initial claim was denied by the CSSP because Felder's failed to provide any documentation purporting to satisfy the second prong. It sought re-review of the denial, submitting a one-paragraph letter from Whitney Bank indicating that it had been denied a commercial line of credit in "late 2011." The CSSP concluded that the Whitney Bank letter did not sufficiently identify a factor outside Felder's' control that prevented it from recovering revenues in 2011 and again denied the claim. Felder's sought reconsideration of the second denial based on the same documentation and was denied a third time. It then appealed to the CSSP Appeal Panel.

In support of its appeal, Felder's provided (1) an additional letter from Whitney Bank clarifying that the line of credit Felder's had sought from the bank was for an immediate cash infusion in late 2011, and (2) documents describing a program by General Motors ("GM"). The program, called "Bump the Competition," provided collision centers with new parts at or below cost so as to destroy aftermarket competition.

The Appeal Panel denied Felder's' appeal, holding that: (1) the Whitney Bank letters did not show with sufficient specificity how the denial of the line

2

No. 16-30786

of credit affected Felder's revenues in 2011; and (2) because the documentation provided by Felder's regarding the Bump the Competition program showed that it had been in place since 2009, those documents also did not show with sufficient specificity how the program prevented Felder's' revenues from recovering in 2011. After failing to convince the Appeal Panel, Felder's sought discretionary review by the district court, which was denied. It now appeals to this court, arguing that the district court abused its discretion in denying review.  We AFFIRM.

## II

Felder's argues that the Whitney Bank letters and/or the documentation it provided describing the Bump the Competition program are sufficient to satisfy the second prong. We address each in turn.[1]

A. The Whitney Bank Letters

In its submission to the Appeal Panel, Felder's provided two letters from Whitney Bank. The first, addressed to "Mr. & Mrs. Felder," stated only that "Whitney Bank received a request for a commercial line of credit in late 2011. Based on the financial information provided at that time, Whitney Bank was not able to approve the request." The second follow-up letter added that "the purpose of this loan request was for an immediate cash injection to sustain business operations of Felder['s] Collision Parts, Inc. in 2011." The letters do not indicate the amount of the requested line of credit or how the loan might have been used to recover revenues in 2011. Indeed, to the extent it indicates anything at all, the second letter tends to show that the loan was intended

---

[1] The parties argue extensively regarding the proper way to interpret the second prong's text as it is articulated in Exhibit 4B. They dispute at length, for example, over whether the bulleted list of factors described is illustrative or exclusive. We need not reach this or any other question of textual interpretation, however, because Felder's' contentions fail even if we accept its interpretation of the provision.

merely to sustain Felder's' status quo in 2011, and not to expand operations or recover lost revenues. We therefore agree with the Appeal Panel that the Whitney Bank letters are "insufficient to show a factor outside Claimant's control that prevented a recovery of revenue in 2011."[2]

B. The Bump the Competition Program

The documentation provided by Felder's regarding GM's Bump the Competition program is insufficient on a number of fronts. Felder's provided the Appeal Panel with: (1) a document, evidently given to the owner of Felder's by an employee of a competitor and dated January 1, 2009, which described the Bump the Competition program and included spreadsheets listing prices for specific parts within the program; and (2) a sworn affidavit from the owner, stating that he was personally aware of at least one competitor who participated in the Bump the Competition program. Felder's argues that these documents are sufficient to establish that its competitors used the Bump the Competition program in 2011, and that said participation prevented recovery of Felder's' revenues.

We disagree. First, the documentation provided does not establish that any of its competitors participated in the Bump the Competition program in 2011. The documents from 2009 are obviously insufficient on this front. And the owner's affidavit is also insufficient, in light of the Claim Administrator's Policy 474, which provides that "[a] document prepared by the claimant . . . or the claimant's attorney is not sufficient on its own to satisfy" the second prong of the Decline-Only BEL test. Furthermore, the owner did not testify that any

---

[2] The Appeal Panel noted that, because the loan was denied in "late 2011," it was more likely that "any effect a granted credit line would have had would more likely have occurred in 2012." Because we hold that the letters are too vague to show that the cash infusion might have impacted 2011 business operations, we need not evaluate the reasonableness of the Appeal Panel's determination on this front.

No. 16-30786

competitor was, in fact, participating in the Bump the Competition program *in 2011.*[3]

In short, these documents are woefully inadequate to establish that the Bump the Competition program prevented Felder's' revenue from recovering in 2011.[4]

## III

The documents Felder's provided to the CSSP and Appeal Panel were inadequate to satisfy the second prong of the Zone D Decline-Only BEL test as described in Exhibit 4B to the Settlement Agreement. The district court's denial of discretionary review is therefore AFFIRMED.

---

[3] The owner did testify that "[t]he effects of the Bump the Competition program – lost sales to [a named competitor] – were felt by Felder's in 2011 and prevented any recovery in revenue by Felder's in 2011." But this statement is (1) too conclusory to be worth crediting, and (2) does not actually claim that any competitor was participating in the Bump the Competition program in 2011.

[4] The parties argue at length as to whether the "in 2011" language in Exhibit 4B requires that the factor preventing recovery of revenues must have been *unique* to 2011, or only that it *existed* in 2011. The Appeal Panel concluded that the former interpretation was correct. We do not reach the issue because, even accepting the latter interpretation, the documentation provided by Felder's was insufficient.